United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BERNARD HAYES,

　　　　　　Plaintiff,

　　v.

DEPUTY BLUNT #2530,

　　　　　　Defendant.

Case No.  24-cv-08905-RMI

**ORDER RE: DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Re: Dkt. No. 24

Now pending before the Court is Defendant's Motion for Summary Judgment on the merits and on qualified immunity. (Dkt. 24.) Plaintiff filed an opposition (dkt. 31) and Defendant filed a reply (dkt. 32). For the reasons stated below, Defendant's Motion is GRANTED.

## BACKGROUND

**Allegations in the Complaint**

Plaintiff, a detainee, sued Defendant San Francisco County Deputy Blunt pursuant to 42 U.S.C. § 1983 for excessive force. (Compl., Dkt. 1.) Plaintiff alleges that while in San Francisco County Jail, he approached Defendant and asked if he could return to the job that he had worked for more than two years and from which he had recently been removed. (Compl. at 2.) Defendant told Plaintiff he could not have that job, so Plaintiff walked away. (Compl. at 3.) According to the Complaint, Defendant then approached Plaintiff "with anger" and Plaintiff suddenly found himself on the ground being forcefully handcuffed while someone he believed was Defendant grabbed his neck and suffocated him. (*Id*.)

**Factual Background[1]**

On June 28, 2024, Defendant was working at the jail when Plaintiff approached Defendant's elevated platform in the jail dayroom. (Blunt Decl. ¶ 2, Dkt. 24-6; Hayes Dep. 12:1–24, 63:1–5, Dkt. 24-2, Jan. 14, 2026.) Plaintiff expressed his desire to return to his old job, but Defendant explained that he could not be reinstated in the position.[2] (Blunt Decl. ¶ 2; Hayes Dep. at 63:5–21.) During this conversation, Plaintiff "appeared visibly agitated and was aggressive in his tone, manner, and speech." (Blunt Decl. ¶ 2; *accord* Blunt Decl. Ex. A, Jail Surveillance Camera 1 ("Jail Cam. 1") at 0:22-0:40, 1:08-1:45, Dkt. 27-3.)

Defendant felt that based on Plaintiff's conduct and statements, he was disrupting the security of the jail dayroom, where approximately 40 to 50 other detainees, civilian visitors, and employees were present. (Blunt Decl. ¶ 3.) Based on his training and experience, Defendant felt that Plaintiff should be separated from the other detainees and civilian visitors to prevent escalating tensions and possible injury to others.[3] (Blunt Decl. ¶ 3.)

Defendant ordered Plaintiff to return to his cell several times. (Blunt Decl. ¶ 4; Hayes Dep. 13:5–16, 68:4–6.) Plaintiff did not comply, instead remaining in the area and arguing with Defendant. (Blunt Decl. ¶ 4; Blunt Decl. Ex. B, Jail Surveillance Camera 2 ("Jail Cam. 2") at 1:41-2:25, Dkt. 27-4; Hayes Dep. 13:10–14:6, 69:11–19.) Plaintiff concedes that he continued speaking to Defendant but contends that he was walking back to his cell. (Hayes Dep. 13:7–21, 68:7–69:24.) Defendant repeated his order that Plaintiff leave, but he continued to argue. (Blunt Decl. ¶ 4; Hayes Dep. at 73:22–74:13.)

Due to Plaintiff's refusal to return to his cell, as well as his tone, manner, and level of agitation, Defendant believed that Plaintiff posed a safety risk if he remained unrestrained in the

---

[1] Defendant submitted video evidence in support of the Motion, along with declarations, Plaintiff's deposition transcript, and jail records. (Def.'s Mot. Exs. A–D, Dkt. 27; Def.'s Mot., Dkt. 24.) Plaintiff did not submit any additional evidence along with his opposition to the Motion.

[2] Plaintiff recalled Defendant responding that Plaintiff would never get his job back "as long as I work at this facility." (Hayes Dep. 63:12–21.) Defendant stated that Plaintiff had lost his work qualification because he was disciplined for smoking marijuana in his cell. (Blunt Decl. ¶ 2, Dkt. 24-6.)

[3] Plaintiff stated at his deposition that he "smiled and walked away" after Defendant told his he could not have his job back, and that he also made a comment about the situation to someone else in the room. (Hayes Dep. 64:1–3, 67:1–11.)

2

United States District Court
Northern District of California

dayroom—accordingly, Defendant ordered that Plaintiff be handcuffed so he could be removed from the dayroom. (Blunt Decl. ¶ 5; Hayes Dep. 14:1–2, 70:22–23.) Plaintiff heard the order and felt agitated and scared. (Hayes Dep. 14:1–2, 74:15–25.) Plaintiff stated in a grievance that he "told [Defendant] I will not let him cuff me up . . ." (Li Decl. Ex. B at 2, Dkt. 24-3.) Plaintiff refused to comply and walked away from Defendant. (Blunt Decl. ¶ 5; Hayes Dep. 14:1–8; Jail Cam. 2 at 2:25-2:35.) According to Plaintiff's testimony, he responded that he wanted a different deputy to handcuff him and began walking towards that deputy instead. (Hayes Dep. 75:24–76:3.)

As Plaintiff walked away, Defendant followed him and reached out to handcuff him. (Blunt Decl. ¶ 6; Jail Cam. 2 at 2:26-2:29.) Plaintiff pulled away. (*Id.*) Plaintiff stated in a grievance form that when Defendant tried to grab him, his hand "slipped away from [Defendant]." (Li Decl. Ex. C at 3, Dkt. 24-4.) Defendant attempted to handcuff Plaintiff for approximately ten seconds, but Plaintiff did not allow himself to be handcuffed, even after another deputy got involved to assist Defendant. (Blunt Decl. ¶ 6; Jail Cam. 2 at 2:29-2:40.) Plaintiff pulled his hands apart while Defendant and the other deputy attempted to handcuff him. (*Id.*)

Defendant perceived that Plaintiff was escalating his resistance and posed an increasing safety risk to Defendant and the others in the dayroom. (Blunt Decl. ¶ 7.) Defendant took Plaintiff down onto the carpeted floor consistent with his training and with jail policy in order to overcome Plaintiff's resistance and place him into handcuffs. (Blunt Decl. ¶ 9.) Defendant chose this option after Plaintiff had been resisting for approximately twelve seconds, and two deputies working together were unable to handcuff him. (Blunt Decl. ¶ 9; Jail Cam. 2 at 2:30-2:42.)

While on the floor, Plaintiff continued to resist being handcuffed, injuring another deputy. (Blunt Decl. ¶ 9; Jail Cam. 2 at 2:43-2:55, 3:10.) Once Plaintiff was handcuffed, Defendant rolled him onto his side, a position referred to as the "position of recovery." (Blunt Decl. ¶¶ 10, 14; Jail Cam. 2 at 3:24-3:28.) Defendant then conducted a pat search for weapons over Plaintiff's clothing. (Blunt Decl. ¶ 11; Gamino Body Worn Camera 0:39-1:05.) After the search, Defendant left, and other personnel took over. (Blunt Decl. ¶ 12; Gamino Body Worn Camera 1:45.) In the video evidence of the incident, Defendant applied no force or pressure to Plaintiff after he was handcuffed and did not choke him or grab his neck at any time. (Blunt Decl. ¶¶ 14–15; Jail Cam. 2

3

at 2:43-5:05; Gamino Body Worn Camera 0:00-1:45.) Defendant had no other interactions with Plaintiff that day. (Blunt Decl. ¶ 12.)

Plaintiff stated in his deposition that he had no memory from the time when Defendant initially touched his arm to when he was handcuffed on the ground. (Hayes Dep. 86:1–13, 92-93, 122.) According to Plaintiff, after he found himself handcuffed on the ground, other deputies began to arrive and then Defendant choked him for ten to twelve seconds with both hands wrapped around his neck. (Hayes Dep. 14:20–15:8, 96:7–19, 97:1–98:7.) Plaintiff recalled telling Defendant, "you're trying to kill me," after which Defendant let go of his neck. (Hayes Dep. 15:19–22, 98:16–24.) Plaintiff stated that Defendant did not use any force after this moment and they did not have any further interaction. (Hayes Dep. 101:7–22.) Later at his deposition, Plaintiff clarified that Defendant had not immediately choked him after he was handcuffed, stating instead that Defendant had first turned Plaintiff to the side and searched him for weapons. (Hayes Dep. 119:2–22.) After the search, Defendant turned Plaintiff back on his stomach and then at that point wrapped his hands around Plaintiff's neck. (Hayes Dep. 120:14–21.) Plaintiff said there was no touching of his neck between the handcuffing and when he was turned over to his side. (Hayes Dep. 120:10–12.)

After the incident, Plaintiff was taken for medical treatment because he stated that his leg was injured. (Hayes Dep. 16:1–5, 99:23–100:2, 101:1–5; Li Decl. Ex. D at 3, Dkt. 27-9.) He did not mention any choking or head injuries. (Gamino Body Worn Camera 1:12-1:47.) Medical staff examined his leg and told Plaintiff that he would be fine, and Plaintiff said his leg was okay. (Hayes Dep. 16:9–12, 101:3–5.) Plaintiff stated that his leg hurt due to the actions of other deputies and was not related to Defendant or the neck pressure. (Hayes Dep. 114:1–19.) The medical examination also found no injury to Plaintiff's head or vision and no neurological distress. (Li Decl. Ex. D at 2–6, Dkt. 27-9.) Plaintiff stated that later that night and the following day, he began to experience minor headaches and blurry vision and thought he may have a concussion. (Hayes Dep. 91:10–92:15, 131:8–25.) He said that he had not reported hitting his head that day because he did not remember hitting the ground and did not suspect that he might have a head injury until the headaches began later on. (Hayes Dep. 16:4–8, 91:6–92:15.)

4

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, a court will draw all reasonable factual inferences in favor of the nonmovant. *Id*. at 255. In deciding summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory or speculative testimony or allegations do not raise genuine issues of fact and are insufficient to defeat summary judgment. *See e.g., Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment, pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). To prove an excessive force claim under Section 1983, a pretrial detainee must show only that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. "A court (judge or jury) cannot apply this standard mechanically." *Id*. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham*, 490 U.S. at 396).

A non-exhaustive list of considerations that may bear on the reasonableness of the force

used includes "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. Because the *Kingsley* standard applicable to excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended to use excessive force at the time. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (*en banc*). To prevail on their claim, a pretrial detainee must provide "*objective* evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id*. (quoting *Kingsley*, 576 U.S. at 397–98)).

**DISCUSSION**

Defendant argues that he is entitled to summary judgment because there is no dispute of material fact that he used reasonable force, as the video of the incident depicts Plaintiff's agitation and prolonged resistance and does not show Defendant choking Plaintiff or putting pressure on his neck. (Def.'s Mot. Summ. J. at 9–12, Dkt. 24.) Plaintiff's opposition does not address or refute any of Defendant's arguments or evidence, including the video evidence. Plaintiff does not contest that he was agitated and aggressive in his tone, manner, and speech. Nor does he refute that Defendant was justified in taking him to the ground. Instead, Plaintiff predominantly argues that because it is his sworn testimony that Defendant applied force to his neck and Defendant denies choking or using force on his neck, there are disputed facts that cannot be resolved at summary judgment. (Pl.'s Resp., Dkt. 31, at 1.) He contends that the video evidence is subject to interpretation and demonstrates the disputed facts, though he does not identify any specific portions of the video evidence that support his claim or are unclear. (*Id*. at 1, 7–8.)

After reviewing all the evidence, the undisputed facts demonstrate that Defendant did not use excessive force and is entitled to judgment as a matter of law. Plaintiff's allegations in the Complaint are refuted by the video evidence from jail surveillance cameras and body worn cameras. The videos clearly show that Defendant did not wrap his hands around Plaintiff's neck or

choke him. Defendant only used force in taking Plaintiff to the ground and handcuffing him after he refused to be handcuffed and resisted. This use of force was not excessive.

To the extent Plaintiff contends that the video evidence is subject to interpretation and there are disputed facts, his argument is unavailing. "When opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders). Here, the objective video evidence of the incident unambiguously contradicts Plaintiff's testimony. None of the video evidence shows anything resembling Plaintiff being choked. During the deposition, Plaintiff presented contradictory assertions about the timing of the alleged choking, and neither is supported by the video. (Jail Cam 2 at 2:48-3:04; Gamino Body Worn Camera 0:00-1:45.) While there are a few moments when the cameras' view of Plaintiff is obstructed, these moments only last one or two seconds, and Plaintiff stated that he was choked for ten to twelve seconds, so the alleged choking could not have taken place during these few seconds without being shown on camera. Immediately after the incident, Plaintiff stated his leg was injured, but he made no statement about being choked or sustaining an injury to his neck. To the extent the video supports Plaintiff's allegations or is unclear and subject to interpretation, it was Plaintiff's responsibility to present specific arguments. He failed to present any arguments or discuss the video evidence with any specificity.

With respect to Plaintiff being taken to the ground, Defendant's use of force was not objectively unreasonable. It is undisputed that Plaintiff was visibly agitated and aggressive in his tone, manner, and speech. It is also undisputed that he refused commands to return to his cell and resisted handcuffing, even by two deputies. There were approximately 40 to 50 detainees, civilian visitors, and other employees near Plaintiff at the time. In light of these circumstances, it was not objectively unreasonable for Defendant to take Plaintiff to the ground so he could be handcuffed and removed from the room. The undisputed facts and the factors set forth in *Kingsley* support

United States District Court
Northern District of California

7

United States District Court
Northern District of California

Defendant's argument that he is entitled to summary judgment because the minor amount of force used did not violate Plaintiff's constitutional rights. *See Taylor v. Kuerston*, No. 19-cv-0450 TLN KJN, 2020 WL 3840522, at *9–10 (E.D. Cal. July 8, 2020) ("Based on plaintiff's failure to obey the order … defendant['s] decision to apply handcuffs was reasonable … and in furtherance of the legitimate penological interest in maintaining order and security.").

It is also undisputed that Plaintiff was examined by medical staff immediately after incident and they found no injuries, and his head and neurological examinations did not reflect any injury. Moreover, even assuming that Plaintiff did suffer head injuries as he describes, there was still no constitutional violation. Plaintiff actively resisted handcuffing, Defendant only used force after he and another deputy were unable to handcuff Plaintiff due to his resistance, Defendant only used force as necessary to handcuff Plaintiff before searching and releasing him, there was a security problem exacerbated by the presence of civilians in the area, and Defendant reasonably perceived that Plaintiff's actions were a threat to safety. Considering all these factors, the force used for the takedown was not objectively unreasonable. *See O'Neal v. Smith*, Case No. 11-803 DDP, 2015 WL 10938258, at *4, 8–9 (C.D. Cal. July 28, 2015) (deputy's use of force was objectively reasonable when he bent the wrist of a detainee who was resisting handcuffing), *aff'd*, 714 F. App'x 754 (9th Cir. 2018); *Sheridan v. Trickey*, No. 10-06034-AC, 2010 WL 5812678 at *9 (D. Or. Dec. 16, 2010) (takedown maneuver, even when the suspect struck his head and lost consciousness, on a resisting suspect was objectively reasonable and not excessive force as a matter of law because "a reasonable officer, in a situation where an arrestee is resisting arrest and/or creating an immediate threat, would believe that the decision to execute a controlled takedown maneuver is lawful."). Defendant is entitled to summary judgment based on the undisputed video evidence showing the use of force was reasonable and proportionate and did not involve choking; Plaintiff has not met his burden to show there is a genuine issue for trial and to present affirmative evidence from which a jury could return a verdict in his favor.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or

8

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether that right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). A court may exercise its discretion in deciding which prong to address first in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). The Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 58 U.S. 73, 79 (2017) (per curiam); *see, e.g.*, *Kisela v. Hughes*, 584 U.S. 100, 104–08 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife, was ignoring officers' orders to drop the weapon, and was within striking distance of her housemate; prior cases on excessive force did not clearly establish that it was unlawful to use force under these circumstances, where officer may not have been in apparent danger but believed woman was a threat to her housemate).

The Court has not found a constitutional violation in this case, but even if there was a violation, Defendant would be entitled to qualified immunity. It would not be clear to a reasonable deputy that the small amount of force used would be a constitutional violation in this situation, where a detainee did not comply with instructions, resisted being handcuffed while civilians were nearby, and was provided immediate medical attention. *See Brown v. Baudino*, 840 F. App'x 263 (9th Cir. 2021) (brief use of pepper spray followed by immediate medical attention was

objectively reasonable when detainee was a high security detainee and did not actively resist deputies but refused to get off the floor and went limp when they tried to lift him); *Brown v. Los Angeles Sheriff Dept.*, Case No. 15-0843 RMO (JEM), 2021 WL 1554921, at \*7 (C.D. Cal. Mar. 29, 2021) (deputies' use of force was objectively reasonable when high risk detainee was verbally resisting, and then his knee gave out and deputies pushed him against a wall and then had to use force to put detainee in his cell). Defendant is entitled to qualified immunity.

**CONCLUSION**

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment (dkt. 24) is **GRANTED**. A separate judgment shall issue and the Clerk shall close this case.

**IT IS SO ORDERED.**

Dated: June 24, 2026

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California

10